## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Patricia Kelly Hunt on her own behalf and as the administratrix of the Estate of Edward Melvin Hunt; Kelly Marie Hunt<br><br>    Plaintiffs<br><br>    v.<br>Culebra Beach Villas Corporation, d/b/a Flamenco Beachfront Villas; Meraki Realty Group, LLC d/b/a Meraki; Airbnb, Inc.;  Autoridad de Conservacion y Desarrollo de Culebra; Mapfre Praico Insurance Company;  X COMPANY;  A and B INSURANCE COMPANY;<br>    Defendants | Civil no.<br><br>Plaintiffs Demand Trial by Jury |

### COMPLAINT

TO THE HONORABLE COURT:

**Come now** the Plaintiffs, Patricia Kelly Hunt and Kelly Marie Hunt, through the undersigned attorneys, and before this Honorable Court respectfully allege and pray as follows:

### I. THE PARTIES

1.    Plaintiff, Patricia Kelly Hunt (hereinafter "Mrs. Hunt") is of legal age, widowed, and domiciled in the State of Ohio.

2.    Mrs. Hunt was married to and is the widow of Mr. Edward Melvin Hunt, who tragically died in the Island of Culebra on

February 19, 2023 as a result of lack of proper emergency care after a drowning episode on Flamingo Beach, Culebra.

3. Mrs. Kelly appears on her own behalf for her damages and as the administratrix of the Estate of Mr. Edward Melvin Hunt.

4. Kelly Marie Hunt, (hereinafter, "Kelly") is of legal age, married, and domiciled in the State of North Carolina.

5. Kelly is the daughter of Mr. Edward Melvin Hunt and Mrs. Hunt, and she was in Flamingo Beach, Culebra, Puerto Rico at the time of the demise of Mr. Hunt as further related in this complaint.

6. Autoridad de Conservación y Desarrollo de Culebra, referred to as "Culebra Authority" is a Municipal Public Corporation organized and existing by virtue of Law No. 66 of June 22, 1975, as amended, 21 LPRA § 890 et seq., under the supervision of the Mayor of the Municipality of Culebra as its president of its governing body and attached to the Municipality of Culebra, that has the capacity to sue and be sued.

7. The Culebra Authority was created exclusively for the purposes of administering and managing the natural resources of the Island of Culebra, which include Flamenco Beach, the place where the tragedy that ended with the life of Mr. Hunt occurred.

8.   The Culebra Authority establishes the norms, regulations and directives, in accordance with environmental and natural resources laws.  It is headed by an executive director who responds to the Mayor of the Island of Culebra, who acts as the president.

9.   The Culebra Authority has under its jurisdiction the administration and management of Flamenco Beach.  It is also in charge of maintenance, conservation, security and the employees needed for each such function related to said beach, to include lifeguards and safety and emergency equipment.

10.  Culebra Beach Villas Corporation d/b/a Flamenco Beachfront Villas, (hereinafter "Flamenco Villas") is the corporate entity organized under the laws of Puerto Rico, with principal place of business located in Puerto Rico, that owns a number of Villas that serve as short term vacation stay accommodations in the Island of Culebra and that conduct business as Flamenco Beachfront Villas.

11.  It was at one of the Flamenco Villas, Villa number 18, the place where members of the Hunt family stayed as paying guests during their visit.

12.  As per Puerto Rico law and due to the number of units, Flamenco Villas is an Innkeeper as per definition of innkeeper. See Act 85 of June 23 of 1956, as amended, 10 LPRA § 711 et seq.

13.  Meraki Realty Group, LLC, (hereinafter "Meraki") is a Puerto Rico limited liability company with principal place of business located in Puerto Rico.

14.  The sole member of Meraki Realty Group, LLC, by information and belief, is Mariana Pereira Ruiz, of legal age, single and domiciled in Puerto Rico.

15.  Meraki was the entity that through the Airbnb platform served as host for the Hunt family during their stay at Flamenco Beachfront Villas, villa number 18, also referred to by the Airbnb website as "Meraki's Place".

16.  By information and belief, Meraki and the Flamenco Villas made a profit from the stay of the Hunt family and thus Meraki is also jointly responsible to the plaintiffs for damages caused by fault or negligence as further described in this complaint.

17.  Airbnb, Inc., (hereinafter "Airbnb") is a Delaware corporation with principal place of business located in the State of California, managing and operating an online market place for short term rental stays.

4

18.   It was through the use of the Airbnb platform that the Hunt family booked their short-term vacation stay at the Meraki's Place or Flamenco Villas, villa number 18, based on the information provided by the defendants via the Airbnb website.

19.   By information and/or belief, Mapfre Praico Insurance Company of Puerto Rico is a duly registered insurance company authorized to conduct the business of insurance in the Commonwealth of Puerto Rico, that at the time of the accident described in this complaint had issued and had in full force and effect, one or more insurance policies to cover the legal liability for fault and/or negligence of the Municipality of Culebra and their employees in the performance of duties.

20.   X Company is the fictitious name used to denominate another company that also owns, operates, administers, hosts and manages, together with the rest of the defendants, Meraki's Place or Flamenco Villas. When properly identified the complaint may be amended to include the proper name of said defendant.

21.   A and B insurance company, are the fictitious names used to denominate the currently unknown insurance companies that at the time of the incident described in this complaint had

issued and had in full force, as per the terms and
conditions of the issued insurance policies, liability
insurance policies to cover the legal liability of one or
more of the above-named defendants. Once the identity of
each said insurance company is known, the complaint may be
amended so as to include the proper insurance company
defendant as an additional defendant to this complaint.

## II. JURISDICTION

22. This Honorable Court has subject matter jurisdiction to
entertain the instant case pursuant to *28 U.S.C. section
1332 (a) (1) be*cause this is a case or controversy between
citizens of different states and the amount in controversy
is in excess of seventy-five thousand dollars ($75,000.00),
exclusive of interest and costs.

23. Pursuant to 28 U.S.C. Section 1392 (a) (2), venue of this
action is proper in this district because the events, acts
or omissions giving rise to the claims occurred in Puerto
Rico.

## III. TOLLING OF THE STATUTE OF LIMITATIONS

24. The incident that gives origin to the present case occurred
on February 19, 2023, at Flamenco Beach, Culebra, and thus,
as per the Civil Code of Puerto Rico of 2020, at the time of
filling the complaint the statute of limitations of one (1)

year has not elapsed.  See Articles 1191 (f) and 1204 (a) of the  Civil Code of Puerto Rico.

## IV. **THE FACTS**

25.  Plaintiffs were guests at Meraki's Place or Flamenco Villas, villa number 18, starting on February 16 until February 21, 2023.

26.  To entice the Hunt family to stay and reserve their stay the Hunt family used the information provided in and the Airbnb platform. For this purpose confirmation code HMRCCZP5BR was issued.  The Hunt family paid for their stay.

27.  On the early afternoon of February 19th, 2023, at approximately 1PM, Mr and Mrs. Hunt were in the beach area in front of Flamenco Beachfront Villas, swimming in the ocean.

28.  Mr. Hunt swallowed sea water, experienced difficulty swimming, and pleaded for help from his wife.

29.  Mrs. Hunt hearing her husband and noticing her husband struggling in the ocean, immediately proceeded to assist Mr. Hunt, swimming him towards the shore.

30.  Mrs. Hunt immediately cried for help. Two men came to the assistance of Mr. and Mrs. Hunt and helped pull Mr. Hunt onto the beach area.

31. Within seconds, a person who identified herself as a nurse, assisted Mrs. Hunt as well and started applying cardiopulmonary resuscitation (CPR)on Mr. Hunt.

32. The lady performing CPR asked Mrs. Hunt to run towards Flamenco Villas to get the facility defibrillator device and call 911.

33. Mrs. Hunt ran towards the Flamenco Villas administration office and pleaded for help from the Flamenco Villas employee, requested that a 911 call be made and requested that the employee bring to the beach the defibrillator equipment.

34. The employee attending the administrative office of Flamenco Villas acknowledged Mrs. Hunt, and appeared to agree to provide all the requested assistance as requested by Mrs. Hunt.

35. Mrs. Hunt, then ran to her Villa, Villa 18 (Meraki's Place), to alert her family of emergency situation affecting Mr. Hunt. Kelly and Kelly's husband proceeded to run towards the beach with Mrs. Hunt.

36. The employee attending the administrative office of Flamenco Villas never made it to the beach. No defibrillator equipment belonging to the resort made it to the beach.

37. At this point due to the delicate and worsening condition of Mr. Hunt, the situation turned desperate. Valuable time was lost waiting for the Flamenco Villas defibrillator equipment that the employee was of Flamenco Villas was to deliver. The nurse continued to try to save the life of Mr. Hunt and Kelly's husband also assisted in the process, both administering CPR in turns.

38. It turns out that Flamenco Villas had **no** defibrillator equipment. Yet, the administrative personnel on duty of Flamenco Villas never informed nor warned Mrs. Hunt or the rest of the family members regarding the lack of emergency equipment.

39. Other on-lookers gathered at the beach and called 911. Approximately 45 minutes after Mr. Hunt was laying on the sand, Municipality of Culebra emergency service personnel arrived at the scene.

40. Even though they brought an Automated External Defibrillator (AED) machine, they had no sense of urgency to try to apply said device to help save the life of Mr. Hunt. More valuable life saving time was lost.

41. The Hunt family had to plead for the emergency services personnel that arrived to the beach to use the AED

equipment.   Finally the emergency services personnel that arrived at the scene agreed to use the equipment.

42.   The emergency services personnel although having the ability to transport via ambulance Mr. Hunt to the Culebra Emergency Medical facilities without delay to try to save his life, failed to transport Mr. Hunt to the Municipality of Culebra hospital, opting instead to keep him at the beach location and later declare Mr. Hunt as dead, leaving his lifeless body in the sand and the Hunt family emotionally destroyed.

43.   Mr. Hunt was pronounced dead at 2.17 PM.

## V.   LIABILITY OF THE DEFENDANTS

44.   The incident that resulted in the eventual death of Mr. Hunt, could have been prevented if all the defendants and their employees had acted diligently, following proper emergency protocols and in a timely manner.   Yet they failed to act accordingly.

45.   The employees of Flamenco Villas were negligent in not advising Mrs. Hunt when she requested, that Flamenco Villas had no defibrillator equipment.   Valuable time was lost expecting for such equipment to arrive at the beach as requested by Mrs. Hunt and as agreed to by the employee of Flamenco Villas.

46.  Rather than warning Mrs. Hunt of the lack of the requested emergency medical equipment, the employee of Flamenco Villas opted to keep quiet and not to communicate that Flamenco Villas had no such equipment.

47.  Flamenco Villas and their employees as Inkeeper's under Puerto Rico law, should have taken proactive actions to assist Mr. and Mrs. Hunt when she pleaded for assistance. Yet they failed to act as required under the circumstances and as per their obligations as Innkeepers. They also failed to timely warn that they lacked the emergency life saving equipment that Mrs. Hunt requested.

48.  If the Hunt family new this information, they could have taken Mr. Hunt directly to the hospital to try to save his life, rather than waiting in vain for Flamenco Villas emergency medical equipment that did not exist. The hospital is a short driving distance from the place of the events.

49.  Flamenco Villas, to include Meraki Realty Group, LLC, should had ensured, either as Inkeeper's, owners, managers, host, and administrators, that their Flamenco Villas employees were properly trained to act when confronted with emergency situations encountered by their guests, like that encountered by the Hunt family. Yet, the defendants failed to provide adequate training to their employees.

50.  All the defendants and their employees failed to act and to provide the required proper and timely response the emergency situation called for. Due to the lack of training valuable time was lost that ended costing Mr. Hunt's life.

51.  Flamenco Villas, to include Meraki Realty Group, LLC, either as Inkeeper's, owners, managers, hosts, and administrators, should had warned the Hunt family that their employees were not trained to assist in emergency situations and that their employees lacked equipment and training to assist in emergency situations.

52.  The defendants failed to warn the Hunt family of the lack of capacity of their employees to assist in medical emergency situations and their lack of emergency equipment, causing with this inaction that valuable time was lost.

53.  As Inkeepers, administrators, owners, host and managers, Flamenco Villas, owners, Meraki Realty Group, LLC, and their employees are directly responsible to the plaintiffs for their negligent and lack of proper response when confronted with an emergency medical situation.  As Innkeeper's their lack of proper preparedness and actions and the lack of proper communication with Mrs. Hunt contributed to the death of Mr. Hunt and should be considered gross negligence.

54. Airbnb, Inc., under the economic benefit theory, is also responsible to the plaintiffs for the negligence actions of the defendants that resulted in the eventual death of Mr. Hunt. At the very least Airbnb, an entity that makes a profit by marketing and promoting defendant's property, in its marketing material should have warned the Hunt family of the steps guests should follow when confronted with medical emergencies and that their host (to include the property owner) had no emergency lifesaving equipment available at the property.  Airbnb, Inc. failed to act and to warn and since it made a profit at the expense of the Hunt family is also jointly responsible to the plaintiffs for all damages.

55. The Conservation Authority, as administrators of Flamenco Beach, failed to have trained life guards in the beach they administered.  The events that resulted in the eventual death of Mr. Hunt commenced at 1PM.  Just as important, said entity failed to warn the Hunt family that no life guard or emergency trained employees were located at the particular Flamenco Beach location.

56.  The Conservation Authority as the administrator of one of the most famous beaches in the World, and the principal tourist attraction of Culebra, visited by many thousands of persons every year, failed to have emergency lifesaving

equipment located at the beach or trained emergency services personnel.

57. The Conservation Authority even though many drowning or near drowning episodes have occurred at Flamenco Beach during normal visiting hours, to this date has failed to act to implement needed safety policy changes to save lives. Their failure to act, to include having properly trained personnel on duty and lifesaving equipment during normal visiting hours to Flamenco Beach amounts to gross negligence.

58. The Municipality of Culebra, as the employer of the emergency medical personnel who finally arrived at the beach, failed to ensure that their employees were properly trained when encountering a person like Mr. Hunt with a life-threatening situation that required emergency medical attention.

59. The Municipality of Culebra emergency medical personnel failed to arrive at the scene in a timely manner. They were lax and unprepared in the performance of their duty. This is not the first time the Municipality of Culebra emergency medical personnel are ill prepared to afront a medical situation on Flamenco Beach.

60.  The Municipality of Culebra emergency medical personnel failed to properly act when Mr. Hunt needed emergency medical services.

61.  Rather than hesitate in providing emergency medical services, like they did, they should have been proactive and without delay given emergency services and/or taken Mr. Hunt to the hospital via ambulance.  Yet, they were negligent in the performance of their duties and failed to act.

62.  The Municipality of Culebra emergency services personnel opted not to bother transporting Mr. Hunt to the Culebra Hospital, preferring instead to declare him dead at the scene and leaving him at the beach until they pronounced him dead.

63.  At the very least, since the Municipality of Culebra has a medical doctor on duty, without delay they should have transported Mr. Hunt by ambulance to the hospital to try by every means possible to save the life of Mr. Hunt and/or allow the doctor on duty to save Mr. Hunt. Yet they failed to act opting instead to declare Mr. Hunt dead.

64.  The Municipality of Culebra is also responsible to the plaintiffs for the failure to properly train their emergency medical personnel to adequately respond to emergencies and ensure that their employees follow proper emergency services

protocol. Yet, the Municipality medical facility to include the hospital supervisors, failed to properly train their medical emergency employees, supervise, and demand that their employees act prudently and in accordance with proper emergency medical standards.

65. Mapfre Praico Insurance Company, by information and belief, has issued an insurance policy to cover the legal liability of the Municipality of Culebra and its employees for negligence. Under the insurance code of Puerto Rico, direct action statute, Mapfre Praico is directly responsible to the plaintiffs for all damages suffered as a result of the negligence of the medical emergency employees of the Municipality of Culebra in the performance of their duties.

## VI DAMAGES

66. As a result of the death suffered by Mr. Hunt, Mrs. Hunt has suffered great mental anguish.

67. She no longer has the company of her husband of fifty years.

68. She feels alone, distressed, sad and has suffered great mental anguish. She feels depressed and was totally devastated at seeing her husband slowly die due to lack of proper care and equipment.

69. She still remembers in shock and anger the lack of proper response by all of the defendants and the lack of warnings

provided.  This has caused her to suffer additional mental anguish.

70. Mrs. Hunt no longer enjoys the various pleasures of life that she shared with her husband prior to this tragedy.

71. All of her damages are estimated in a sum in excess of TWO MILLION DOLLARS ($2,000,000).

72. Kelly Hunt, suffered the loss of her father. The actions by the defendants in not providing warnings, proper information and care and medical attention amounted to gross negligence.

73. She still remembers in shock how the lack of proper actions by all of the defendants, resulted in a great amount of time lost and in the eventual slow death of her father at the beach.

74. Kelly feels very sad and depressed.  She is now also constantly worried about her mother, since her mother is now alone and sad. This has caused her additional anguish.

75. She feels angry at the lack of proper response of all of the defendants.  She estimates all of her damages in an amount in excess of SEVEN HUNDRED THOUSAND DOLLARS ($700,000).

## VII SPECIAL ECONOMIC DAMAGES

76. Mr. Hunt provided economic support to his wife. With his unfortunate death, Mrs. Hunt will no longer have the economic support that she enjoyed from her husband and thus she will be experiencing economic losses.

77. The incident that resulted in the death of her husband has had economic consequences in the life of Mrs. Hunt.

78. She no longer has the same amount of income and due to the death of her husband, she has incurred in a number of unwanted expenses, to included funeral, trip and transportation costs.

79. The value of all of her economic damages as a result of the death of her husband is reasonably estimated in a sum in excess of TWO HUNDRED AND FIFTY THOUSAND DOLLARS ($250,000) a sum that is also owned to her jointly by all of the defendants.

## VIII APPLICABLE LAWS

80. All insurance company defendants, as per Puerto Rico law are directly liable to the plaintiffs as per the terms and conditions of the defendants' insurance policies in effect at the time of the accident.

81.  Under Puerto Rico Law, and in particular Article 1536 of the Civil Code of Puerto Rico of 2020, all of the defendants and their employees are directly and/or jointly responsible to the plaintiffs for all damages caused for fault and/or negligence.

82.  Under Puerto Rico Law, and in particular Article 1538 of the Civil Code of Puerto Rico of 2020, if a jury determines one or more  of the defendants acted with gross negligence, it is requested that the jury be instructed to double the compensations to be awarded to the plaintiffs with regard to each such the gross negligent defendant verdict.

83.  Plaintiffs demand trial by jury.


**WHEREFORE**, it is respectfully requested that after jury trial this Honorable Court enter judgment for plaintiffs, for the relief demanded in the complaint with the imposition of reasonable attorneys' fees and costs.

In San Juan, Puerto Rico, this 17th day of February, 2024.

**RIVERA-ASPINALL, GARRIGA
& FERNANDINI LAW FIRM**
Attorneys for Plaintiffs
1647 Adams Street
Summit Hills
San Juan PR 00920
Telephone: (787) 792-8644
Facsimile: (787) 792-6475
Email: aspinall@ragflaw.com

**S/Julian Rivera Aspinall**
Julian Rivera-Aspinall
USDC# 208506